You're a one man gang. May it please the court. Counsel, my name is Daniel Hillis. I'm with the Federal Public Defender's Office and I represent Mr. Tate on this matter. He raises one issue on appeal, and that is this. Because the district court conducted an inadequate FREDA colloquy that led to the erroneous decision to allow Mr. Tate to represent himself, the case should be, excuse me, the conviction should be vacated and remanded so that Mr. Tate gets a fair trial with counsel. Of course, FREDA is designed to ensure that that important right, that Sixth Amendment right, is protected and that an individual does not give up that right unless there's a thorough thoughtful consideration of what the facts and circumstances are that allow him to make that waiver. So you can relinquish the Sixth Amendment right, but of course, there has to be a knowing and intelligent waiver of that. The government has contested the standard of review in this case and so it's important to spend a moment on that. The standard of review as a general matter for constitutional issues is de novo. The government cites a case that the District Court from this court that says abusive discretion is the appropriate standard. However, we have cited cases that say constitutional issues and the right to counsel in particular are subject to de novo review. The balance of the authority from the different circuits from the 3rd, 5th, 9th, and 11th Circuit all hold that the proper standard of review is de novo. And so I think consistent with the weight of the circuit authority and past jurisprudence by this court that has stated about the use of de novo standard as opposed to the abusive discretion standard, de novo review is appropriate here for the constitutional issue. And that's because this is in the same box as other questions of waiving constitutional rights like Miranda, etc.? Yes, and in particular implicates another constitutional right, which is the right to counsel. But yes, absolutely. So it's consistent with jurisprudence of this court and other courts. So in Volp and Testa, this court, as well as in Ferretta, there's the discussion about what is a knowing and intelligent waiver of your Sixth Amendment right to counsel. And in Sandals, this court said that there are minimum considerations the District Court must inquire of. That is an individual's age, level of education, that the District Court tell him about the nature of the charges, possible sentence, and the difficulties he did encounter in representing himself. Some of those matters were never addressed by the District Court. The majority of them were not addressed by the District Court, and some of them were addressed, but superficially. Well, the judge did go on at significant length about the decision being unwise. That consumes most of the transcript, actually. I'm trying to talk him out of it, basically, is the way I read this transcript. Judge Miller was really trying to talk him into sticking with his counsel, and that obviously wasn't what he wanted to do. He was very insistent that he wanted to go it alone. Interestingly, Judge Miller also, in the context, my client kind of wound up in a box. So he told him, you can have counsel or you cannot, and if you wish to consider what to do here, please be advised I'm not continuing the case over so that myopic insistence on keeping the trial calendar was inappropriate. Well, it wasn't just a calendar issue. It's distinct from that line of cases that talk about, you know, calendar concerns don't trump, but we have different considerations here. There was witness manipulation going on, and the court was remedied. If my client is in a different facility from those potential witnesses, that obviates that problem. Well, not quite. I'm not sure. There are three different ways you can get to the witness besides picking up a phone and calling, or knocking at his door. Well, he's incarcerated, so there's going to be no door knocking, and restriction on phone privileges would, of course, prevent that sort of access that you're on or otherwise described. Well, that's pretty good, but not total, is it? I think it would be perfectly adequate here. It would address the concerns. And the court's concern about the government having brought witnesses in, that's a concern, but it's not a primary concern. The primary concern here is whether my client has made a knowing and intelligent waiver. These are extraneous factors. I agree that's the issue. Did he make a knowing and intelligent waiver? So, there was a formal inquiry, as Judge Sykes has stated, the court made an effort to dissuade him, but did it engage in the proper analysis? Did it consider the right factors? And I don't think that it did, because it didn't really discuss in a meaningful way what the procedural requirements are, what the evidentiary rules are. It talked to them, talked about them briefly, and said that they are consistent with Indiana rules, but that really doesn't inform my client of anything, because if he doesn't know what the Indiana rules are, then what's the purpose of that benchmark? He said it's rather evident that he's had prior criminal experience, but there's no inquiry. Did he represent himself in those cases? What those cases were? Did he file motions? Anything of the sort that makes it other than a factual determination that he previously participated in a case, which was plain on its face that he had. Well, he knew what his deficiencies were, though. I'm not sure that he did. It's a matter of self-awareness, I suppose. You can think that you're better at something than you are until it's illustrated to you. You know, we have to make sort of an objective determination. That's fine. Based on this record, I think the objective determination shows that the relevant benchmarks were not considered by the district court in its consideration to allow Mr. Tate to move forward in self-representation. Certainly, the Sandals factors weren't appropriately addressed, and as a consequence of not adequately inquiring about my client's age, informing him about the nature of the charges, stating the penalties. Well, he'd had three jury trials. How old would he have to be? He didn't represent himself, excuse me, the manner in any representation in those matters, I'm not certain of. But I think that he had counsel for some of those jury trials. He represented himself at some others, but again, it's about what did you do and how effective were you, perhaps, in those matters. And let me turn briefly to effectiveness of his representation, because the government relies on those factors. But those are, axiante, those are factors and considerations that come after the decision to allow him to represent himself. So those are not informative of the decision-making process that's taking time to allow him to move forward on his self-representation. If he did a marvelous job after the fact, that doesn't show that the phoreticology was adequate in the first place, to allow the self-representation. And also, he didn't do a great job. And if the great job would be acquittal, that didn't happen. Under those standards, we're all in trouble. Well, yeah, I'm gonna use a high benchmark on that, because I think he did have a defensible case, Your Honor. And if he didn't, the case could have turned out differently. And in retrospect, I think that the phoreticology, because it was defective, giving him a shot at a fair trial with counsel to aid him, I think would be appropriate here. Unless the Court has further questions of me, I reserve the balance of my time. Thank you. Good morning, Your Honor. May it please the Court. My name is Nathaniel Whelan. I'm here on behalf of the United States. Your Honors, this Court looks at whether a defendant knowingly and voluntarily waived his right to counsel, based on the record as a whole. It doesn't just look at the colloquy. It looks at four different types of considerations. There's no evidence in this record today that Mr. Tate did not knowingly or voluntarily waive his right to counsel. I'd like to talk about the other factors that this Court considers besides the colloquy, because Mr. Tate focuses exclusively on the colloquy. He calls it inadequate, is actually the word he used today. This Court's affirmed waivers, even when it's using that exact word. The colloquy wasn't adequate. Talks about in Bell or in Todd. It's when there's been no colloquy, when the colloquy hasn't conveyed any information. The colloquy is not outcome-determinative. It's not dispositive. This Court also looks at, for example, whether there's any other evidence in the record that the defendant knew what he was doing was unwise. There's evidence of that in this case. The District Court three other times besides the initial colloquy said, do you want to keep representing yourself? He said yes. The District Court talked about how he conferred with standby counsel, how he accepted standby counsel, how he ultimately gave sentencing up to standby counsel. Those are acknowledgements that he knew his shortcomings. He appreciated his shortcomings. And your honors are right. He did address the jury. He told the jury, I don't have the credentials of an He acknowledged it in both his opening and closing statement. The argument that this Court doesn't consider anything besides the colloquy or after the colloquy is belied by the case law. This Court's routinely looked at judges' statements that the defendant did a good job or how the defendant actually did a trial. It's looked at his statements that he gave to the jury during the trial. It's looked at his acts at sentencing. It's looked at basically the record as a said that the colloquy itself is not dispositive. The third factor that this Court looks at is the defendant's background and experience. In this case during the colloquy, the Court, as your honor noted, determined that Mr. Tate had engaged in three previous trials. In this Court's jurisprudence, it would be better if he had represented himself or if it were a federal court, but this Court hasn't really drawn the distinction that it's necessary that it was in federal court or he represented himself. What really matters is he has an appreciation for the judicial process, for the criminal system, and you can glean that by looking at whether he's been at trial before. And in fact, Mr. Tate had been in trial before. He was intimately familiar with the judicial system. He had been arrested 22 times by the time he was 25. He's familiar with the judicial system and the Court ultimately said he did a good job during his trial. And, you know, the standard isn't whether he did a great job. The question is, you know, he's not going to. He's not going to do as well as an attorney and that's what the judge tried to impart upon him. Judge Miller said you're better off being represented. But what Mr. Tate did do is he impeached witnesses. He got key concessions that no one saw him with the gun, that the video of the robbery itself was gone. He engaged in voir dire. He properly exercised a peremptory strike. He was involved in the motion limine discussion. Ultimately, I think what kind of makes this case different than other Six Amendment cases in this regard is that the defendant's crime itself showed his knowledge of the judicial system and the criminal process. He got in the car with Mr. Fleming, who he knew to be a felon. As soon as he saw Fleming's gun, he later told friends he realized, well, that was the time he was going to commit the crime because he realized Fleming wasn't going to report it. Fleming wasn't going to testify. Otherwise, Fleming was going to subject himself to criminal liability. And that's when he committed the crime because he knew he appreciated what it meant to be a felon in possession. And then there's the whole issue of the affidavits. Again, that shows a keener understanding of the judicial system than most defendants probably have. He reached out to the witnesses ahead of time. He prepared affidavits. He tried to get them to sign them to say they wouldn't testify against him or to contradict what they were going to say on the stand. He effectively used one of them to keep a witness from testifying. One witness exercised his Fifth Amendment right and said, no, like what he perceived to be his Fifth Amendment right and said, no, I'm not going to testify because of the affidavit. I'd be contradicting myself. Mr. Tate impeached two other witnesses. And that the affidavits ultimately bleed into the fourth factor that this court considers, which is the context of the decision. Mr. Tate says in his opening brief, he told the district court judge, he says in his reply brief, this was a tactical decision. Counsel didn't want to present the affidavits. He did. That's why he decided to go pro se. He wasn't boxed in. He set up the circumstance himself, where he ultimately had the decision whether to go pro se or not. As far as the remedy about witness tampering, putting him in a different cell in isolation wouldn't have done anything. If the court looks at the PSR, specifically, paragraphs 22 and 24 talks about how Mr. Tate actually sent a letter to someone else to ask them to reach out to witnesses so they could tamper with the witnesses and try to get them to change their story. Ultimately, based on the record as a whole, we would defend the colloquy, but I don't think this court even needs to look at the colloquy alone. Based on the record as a whole, Mr. Tate knowingly and voluntarily waived his right to counsel. Unless this court has any other further questions, we ask that you affirm. Thank you. Thank you. How much time? You have two minutes, Mr. Tate. Temporarily, it's important to know when the inquiry is made about, do you want to continue to represent yourself and how informative it is relative to the threat of colloquy. And while the government's correct that there were multiple inquiries by the district court, they occur after he's already crossed the Rubicon, he's made the decision about representing himself. And so I think that that timing is important to note here. It's not informative of the process. Addressing the jury, again, happened after he chose to represent himself. The Sandals factors don't include any of the information the government is relying on. The whole of the record and so forth, that is not consistent with Sandals. And I recognize that the court has in the past looked to the record as a whole, but I think it's more important to lock into what the nature of the colloquy to make sure that it's adequate. And under Sandals, under Ferretta, we see that the colloquy here is inadequate and he should not have been allowed to go forward on self-representation. Previous arrests, that doesn't show much other than he's been arrested, does not tell me anything or does not tell this court anything about his ability to defend himself at trial. That's the essential issue here. Well, actually, no, it's not the essential issue. The essential issue is whether he knowingly and voluntarily waived his right to counsel and elected to represent himself. Better stated, and yet the arrests don't show that. And so, since nothing in this record shows an effective Ferretta colloquy, we cannot conclude that he validly waived his Sixth Amendment right to counsel. There was not a knowing and intelligent waiver for purposes of Ferretta. Consequently, we asked this court to vacate and be adjourned.